
FILED 06 JAN 20 15:13 USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| BRENT SHERMAN, SR., | ) |
| Petitioner, | ) Civ. No. 05-1252-PA |
| v. | ) |
| EDWARD F. REILLY, JR., Chairman, U.S. PAROLE COMMISSION, and CHARLES DANIELS, Warden, FEDERAL DETENTION CENTER, Sheridan, Oregon, | ) **ORDER** |
| Respondents. | ) |

**PANNER, J.**

Brent Sherman, Sr. brings this petition for habeas relief under 28 U.S.C. § 2241 against respondents Edward F. Reilly, Jr., chairman, U.S. Parole Commission; and Charles Daniels, warden, Federal Detention Center, Sheridan, Oregon.

I grant petitioner's motion to file a second amended complaint, and dismiss the second amended petition without prejudice for failure to exhaust administrative remedies.

1 - ORDER

## BACKGROUND

In 1982, petitioner was sentenced in the Eastern District of California to 40 years' imprisonment for 2 counts of bank robbery and 5 years' imprisonment for failure to appear. The sentences were later reduced to 20 years and 1 year.

In 1985, petitioner escaped and robbed a bank in Medford, Oregon. In 1986, petitioner was sentenced in this district to 20 years for armed bank robbery and 5 years for escape.

In 1993, petitioner was paroled. In 1995, his parole was revoked for possession of a controlled substance, extortion, and unlawful use of a weapon.

In August 1999, petitioner was paroled again.

In May 2000, petitioner was accused of raping a woman. The district attorney declined to bring charges because it appeared that the offense could not be proved beyond a reasonable doubt.

In 2000, petitioner was accused of fraud. Petitioner had offered airplane parts for sale on the internet, taken payments from prospective buyers, and then failed to deliver the items. Petitioner apparently reached an agreement with the FBI to reimburse his customers.

Starting in 2001, petitioner sold cars at Bestbuy Auto Wholesale. In 2002, petitioner sold several cars but failed to timely deliver titles to the purchasers. Petitioner also wrote a bad check for more than $11,000 that was to pay the balance of

the loan of a consigned car.

In June 2004, petitioner agreed with the Oregon State Attorney General's office to pay restitution to customers who lost money because of his conduct.

In November 2004, the Parole Commission issued an arrest warrant for petitioner. The arrest warrant alleged that petitioner had violated the conditions of parole by committing sexual assault and fraud, and that the fraud losses were about $27,000.

On December 14, 2004, petitioner was arrested. On December 22, 2004, the Commission issued a supplement to the arrest warrant to add about $11,000 in fraud losses, raising the total alleged fraud losses to $38,383.

On February 10, 2005, a U.S. probation officer gave petitioner a preliminary interview. Petitioner denied committing sexual misconduct or fraud. The probation officer recommended that the Parole Commission find no probable cause on the sexual assault charge and find probable cause on the fraud charge.

On March 18, 2005, a U.S. Parole Commissioner found probable cause to believe that petitioner had violated his parole on the charges for fraud and sexual assault.

On May 11, 2005, a hearing examiner held a combined revocation and early termination hearing for petitioner. The hearing examiner questioned two detectives who had investigated

3 - ORDER

the rape allegations against petitioner. Despite a subpoena, the alleged victim did not appear. The hearing examiner found insufficient evidence to make a finding on the rape charge.

Petitioner contended that he did not intend to defraud any of his customers and that the losses were no more than $10,885. The hearing examiner found that petitioner had committed fraud, causing a total of $38,383 in losses.

After the hearing, the hearing examiner recommended that petitioner's parole be revoked based on the fraud allegation. Because of petitioner's history and the amount of the fraud losses, petitioner's parole revocation guideline range was 24-32 months. The hearing examiner recommended a downward departure to 12 months in prison and 4 months in a community corrections center because petitioner had been paying restitution under his agreement with the state Attorney General.

A U.S. Parole Commissioner agreed with the recommendation to continue petitioner on supervision. On June 2, 2005, the Parole Commission issued a notice of action, continuing petitioner on supervision. The Commissioner also agreed that petitioner's parole should be revoked and that he should receive credit for time spent on parole.

However, the Commissioner disagreed with the recommendation on custody. The Commissioner deferred a decision on release pending further consideration of the rape charge. The

Commissioner remanded for a continued local hearing on the rape charge and ordered that a new subpoena, with a new address, be issued for the alleged victim to appear. The Commission found "there is a reasonable likelihood [petitioner] will engage in conduct violating criminal laws (nunc pro tunc)." On June 29, 2005, the Parole Commission remanded the parole revocation hearing for further hearings on the charge of sexual assault.

On December 7, 2005, the Parole Commission held a hearing. The alleged rape victim again failed to appear despite a subpoena. The hearing officer recommended no adverse finding on the rape charge and agreed with the previous recommendation that petitioner receive a downward departure to 12 months' custody, which would mean a release date of December 13, 2005. The hearing officer stated, however, that he would recommend postponing release for up to 60 days to arrange for placement at a community corrections center. Petitioner objected to delaying his release, contending that the Commission should have held a hearing sooner.

After the hearing, however, the examiner recalculated the amount of fraud from $38,383 to $53,368 based on further review of the evidence. This raised the guideline range from 24-32 months to 34-44 months. The examiner stated that no rehearing on the increased amount was necessary because petitioner did not admit to the fraud or to the amount of loss.

5 - ORDER

On January 3, 2006, the Parole Commission issued a notice of action. The Parole Commission found that the fraud loss was more than $40,000, resulting in a sentencing range of 34-44 months. The Commission made no findings on the rape charge, citing the failure of the alleged victim to appear. The Commission set a term of 34 months in custody for petitioner, with a presumptive parole date of October 13, 2007. The Commission found no reason for departure from its guidelines.

## I. Motion to File Second Amended Petition

Petitioner moves to file a second amended petition that would delete several claims from the previous petition and add new claims based on recent events. Under Federal Rule of Civil Procedure 15, the court should freely grant leave to amend a petition. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).

The proposed second amended petition includes the five claims:

(1) the Parole Commission violated petitioner's statutory and due process rights by failing to issue a summons or warrant as soon as practible after the alleged violations;

(2) the Parole Commission lacked statutory authority to conduct a hearing and then reopen it to determine why a complaining witness did not appear;

(3) the Parole Commission violated petitioner's due process rights by unreasonably delaying the second hearing, held in December 2005, after the June 2005 hearing, and by improperly increasing the fraud loss calculation;

(4) the fraud charge must be dismissed because it does not allege

6 - ORDER

fraudulent intent or misrepresentations; and

(5) the Parole Commission violated petitioner's due process and Sixth Amendment rights by failing to plead or prove the allegation that the fraud losses were greater than $40,000.

In light of Rule 15's policy of freely allowing amendments to the pleadings, I grant petitioner's motion to file the second amended petition.

## II. Failure to Exhaust Administrative Remedies

### A. The Administrative Remedy

Petitioner has the right to appeal the Parole Commission's decision to the National Appeals Board (the Board). 18 U.S.C. § 4215 (1984). The Board has the authority to correct the Parole Commission's errors:

> The Parole Act provides for such internal administrative review. It establishes a three-member National Appeals Board to which prisoners such as Wallace may appeal denials, modifications or revocations of parole. 18 U.S.C. §§ 4204(a)(5), 4215 (1982). Under Parole Commission regulations, appeal may be based on misapplication of the guidelines, mistaken conclusions of fact or failure to follow proper procedures. Moreover, a Regional Commissioner may reopen a case at any time based on new information. 28 C.F.R. § 2.28(a) (1985). This "internal appeal process is provided to assure fairness in every decision, and to be sure that both law and guidelines are administered fairly across the country." S. Rep. No. 94-369, 94th Cong., 2d Sess. 15, reprinted in 1976 U.S. Code Cong. & Ad. News 335, 336.

Wallace v. Christensen, 802 F.2d 1539, 1558-59 (9th Cir. 1986) (en banc) (Hall, J., concurring) (footnotes omitted).

The Board must rule on an appeal within 60 days of receiving it. 18 U.S.C. § 4215(b). The parolee may seek then seek

7 - ORDER

judicial review of the Board's decision through a § 2241 habeas petition filed in district court. See Berg v. U.S. Parole Comm'n, 735 F.2d 378, 379 (9th Cir. 1984).

**B. Standards**

Before bringing a habeas petition, a federal prisoner must exhaust administrative remedies by raising his issues before the Parole Commission's National Appeals Board. See Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam). Requiring exhaustion of administrative remedies

> will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983). Because exhaustion is not jurisdictional, the district court may excuse the failure to exhaust and reach the merits of the issue. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990), overruled on other grounds by Reno v. Koray, 515 U.S. 50, 54-55 (1995).

**C. Discussion**

Petitioner contends that he should be excused from exhausting his administrative remedies because the Board lacks jurisdiction to review his due process claims and because he will suffer irreparable harm.

An agency should be afforded the initial opportunity to

determine its jurisdiction, unless: (1) there is evidence that exhaustion will cause irreparable harm; (2) the agency clearly lacks jurisdiction; and (3) the agency will be unable to answer the jurisdictional question. General Atomics v. United States Nuclear Regulatory Comm'n, 75 F.3d 536, 541 (9th Cir. 1996).

Petitioner has not shown irreparable harm. The Board's resolution of petitioner's appeal could moot all of petitioner's claims. Although petitioner remains in custody during the pendency of the administrative appeal, the Board must resolve appeals within 60 days. The hearing examiner's recommendation of a downward departure to 12 months' custody is not binding on the Parole Commission. See Bryan v. Petrovsky, 726 F.2d 431, 432 (8th Cir. 1984) (per curiam).

## CONCLUSION

Petitioner's motion for leave to file a second amended complaint (#21) is granted. The second amended petition is dismissed without prejudice for failure to exhaust administrative remedies.

DATED this 20 day of January, 2006.

_____
OWEN M. PANNER
U.S. DISTRICT COURT JUDGE